WESTERN COAL & MINING COMPANY v. CORKILLE.

Opinion delivered November 7, 1910.

1. MASTER AND SERVANT—ASSUMPTION OF RISK.—An instruction to the effect that if a miner knew that there was a dangerous quantity of gas in an entry where he was told to work he did not assume the risk therefrom unless he appreciated the danger of working there was erroneous in a case where the miner, being experienced, must have appreciated the danger of working if he knew that there was a dangerous quantity of gas. (Page 390.)

2. EVIDENCE—HEARSAY.—Where it was a question whether defendant's vice principal ordered a certain brattice to be removed from an air course in a mine, such fact cannot be proved by proving that one of defendant's employees had said that the vice principal had given such a direction. (Page 392.)

3. MASTER AND SERVANT—NEGLIGENCE OF FELLOW SERVANTS.—Prior to the fellow servant's act (Acts 1907. p. 162), corporate employers were not

liable to their servants for injuries caused by the unauthorized and negligent act of a fellow servant. (Page 393.)

4. LIMITATION OF ACTIONS—AMENDED COMPLAINT.—Where the original complaint was not barred by the statute of limitations, the statute will not be a defense against an amended complaint which did not set forth a new cause of action, but merely amplified the original complaint. (Page 393.)

Appeal from Crawford Circuit Court; *Jeptha H. Evans,* Judge; reversed.

*Ira D. Oglesby,* for appellant.

*Mechem & Mechem,* for appellee.

FRAUENTHAL, J.  The appellee's intestate, Peter Corkille, was employed by appellant as a tracklayer in a coal mine owned and operated by it at Denning.  On May 6, 1905, he was severely burned and fatally injured by the explosion of inflammable gas while at work down in said mine, and died from the effects of said injuries on May 11, 1905.  His administratrix instituted separate actions to recover on behalf of the next of kin and of the estate of the deceased, which were subsequently consolidated.  The original complaints in both actions were filed on May 4, 1907.  In the original complaints it was alleged that "the defendant was negligent in that it negligently suffered and permitted gases, fire-damps and other combustible and inflammable matter in dangerous quantities to accumulate in said mine, and that it failed to warn the deceased of the presence of such gases, fire-damp and other inflammable material in said mine."  On August 6, 1908, amended complaints were filed, in which it was alleged, in effect, that the act of negligence in permitting and suffering said gas, fire-damp and other inflammable material to accumulate in said mine consisted in negligently breaking down and leaving open a brattice which destroyed the safe ventilation of the mine, and caused the accumulation of the inflammable gases.

The defendant denied each allegation of negligence charged against it, and pleaded as a defense the contributory negligence of the deceased and the assumption of the risk by him of the injury which he sustained.

On the day of the injury the deceased and a fellow-servant named Buchanan, at the direction of the foreman of the

mine, went down in the mine to take up some track in the north fifth entry. At the bottom of the slope they met the pit boss and the fire boss, and inquiry was made of the fire boss as to whether or not there was any gas in this entry. There is a conflict in the testimony as to the reply made by the fire boss to this inquiry. According to the testimony on the part of the plaintiff, he stated that the entry was clear of gas except a mile in the back end, but that there was no gas to hurt. On the part of defendant, the testimony tended to prove that he stated that there was gas in the back heading where a portion of the track had to be pulled. The pit boss stated to the men that if there was any gas they should be provided with a safety lamp. The testimony on the part of defendant tended further to prove that Buchanan was not familiar with the use of a safety lamp, but that Corkille was familiar with its use and in the detection of gas. The safety lamp was then given Corkille, and as he and Buchanan went on to the entry Buchanan said to Corkille that if there was enough gas to require a safety lamp they ought to have the fire boss to look after it, and that Corkille replied that he could look after it as well as the fire boss. The two men arrived at the entry at about 8 o'clock A. M., and the deceased proceeded to inspect the place for gas. He reported to Buchanan that there was no gas, and after working for a short time in the front portion of the entry with open lamps the deceased left for some tools and did not return until after probably two hours or more. The testimony on the part of plaintiff tended to prove that in the meanwhile, and about 9:30 A. M., a brattice located on an air course and about 1,500 feet from the slope where deceased and Buchanan were working, was broken down by fellow-servants, and was left open for a few hours, and that the effect of this was to destroy the ventilation in the entry where deceased was at work and to cause the accumulation in dangerous quantities of inflammable gases at that place. Shortly after the deceased returned to the north fifth entry and proceeded to work with the open lamp, the explosion occurred and caused the injury. The testimony on the part of the defendant tended to prove that the brattice was not broken in any manner.

The court gave a number of instructions on behalf of the plaintiff, among which was the following:

"6. If there was a dangerous quantity of gas in the entry where Corkille was, and he knew it and appreciated the danger of working there, then Corkille assumed the risk of danger from that cause, and plaintiff can not recover. But if there was a dangerous quantity of gas in the entry, and Corkille knew it, yet, if he did not appreciate the danger of working there, he did not assume the risk himself, and plaintiff is not barred from recovery on the ground of assumed risk."

The defendant saved its objection in the proper manner to the giving of the above instructions, and specifically to the latter portion thereof.

The defendant requested the court to give the following instruction, No. 8:

"You are instructed if you believe from the evidence the explosion was caused by the negligence of the employees of defendant in taking down and leaving down a part of a brattice, then for such negligence defendant is not liable, as these employees were fellow-servants of the deceased."

The court refused to give this instruction as asked, but modified the same by adding the following words:

"Unless the same was done with the knowledge and direction and authorization of Thomas. In such case the act of breaking through the brattice, if done, would be the act of defendant, and, if negligent, the negligence would be the negligence of defendant, and not of fellow-servants, and plaintiff would not thereby be barred of recovering under the law of fellow-servants."

1. It is contended by counsel for defendant that the court erred in giving that portion of instruction number 6, at the request of plaintiff, which stated:

"But if there was a dangerous quantity of gas in the entry, and Corkille knew it, yet, if he did not appreciate the danger of working there, he did not assume the risk himself, and plaintiff is not barred from recovery on the ground of assumed risk."

We think that this instruction was misleading and erroneous. The rule is well settled that while a servant does not assume the unusual risks of the service and of which he is ignorant, he does by his contract of employment assume all the ordinary and usual risks of the service and the dangers incident thereto,

and he assumes further all the risks which he knows to exist. If the danger arises from the negligent act of the master, and he becomes aware of such negligence, and has sufficient intelligence to know the effects of such negligence, then he assumes the danger arising therefrom. In cases where it may be doubtful as to whether or not the result of a negligent act of the master may prove dangerous, or where the servant does not have sufficient intelligence or experience to know that the result of such negligent act is dangerous, then it is proper to say that the servant must be aware of the negligent act and also appreciate the danger arising therefrom. But where the servant is aware of the negligent act, and also knows that such act is dangerous, it results necessarily that the servant appreciates the danger arising therefrom. Labatt on Master and Servant, § 259; 26 Cyc. 1179; *Southwestern Tel. Co.* v. *Woughter,* 56 Ark. 206; *St. Louis, I. M. & S. Ry. Co.* v. *Tuohey,* 67 Ark. 209; *Archer-Foster Construction Co.* v. *Vaughn,* 79 Ark. 20; *Graham* v. *Thrall,* 95 Ark. 560.

An instruction similar to the one above was reviewed by this court at this term in the case of *Western Coal & Mining Co.* v. *Moore,* and it was condemned as misleading and erroneous. In distinguishing the case in which it would and those in which it would not be proper to say that the servant must not only be aware of the negligence of the master, but must also appreciate the dangers arising therefrom, Mr. Justice HART, in delivering the opinion of the court in that case, said: "Where a servant is ordered by his master to do an act, he can not be said to have assumed the risk of the unusual peril to which he is subjected unless he knows and appreciates the danger, or unless such danger is obvious, for the reason that in such cases the servant has a right to assume that he is not sent into any unusual peril. But where the servant is not working under the direct supervision of the master, and where the defects connected with the service are open and obvious alike to the master and servant, and the servant of his own volition continues in the service, he assumes the risk. In such case it can not be said that the servant knows of the danger but yet does not appreciate it."

In the case at bar the evidence on the part of defendant tended to show that Corkille was experienced in the detection

of gas in mines and in his appreciation of the dangers arising from excessive quantities thereof. If then he knew there was a dangerous quantity of gas in the entry, he necessarily appreciated the danger arising therefrom and the danger of working with an open lamp at such place. The instruction was therefore misleading, erroneous and prejudicial.

2. In the trial of the case the testimony on the part of the plaintiff tended to prove that certain fellow-servants of deceased broke a brattice in an aircourse which caused a defective ventilation of the entry where deceased was at work and the resultant explosion, which caused the injury. The plaintiff introduced testimony by which she endeavored to prove that the pit boss, Thomas, who was the defendant's vice principal, directed and authorized these fellow-servants to break down the brattice. She attempted to prove this by the witness Roberts. This witness testified that he was one of this crew of fellow-servants who were looking for a leak in a piping, and that the brattice obstructed their progress. While near the brattice, the pit boss, Thomas, came by, and one of the gang went to him and asked him for authority to break down the brattice. He testified that in the dim light of the entry he saw the pit boss and the man, and recognized the voice of the pit boss, but that he did not hear what the pit boss said. The man returned to the rest of the gang and reported that the pit boss had said that they should tear down the brattice. It is not shown that the pit boss heard or could have heard this report made by this man, and he testified that he did not give such direction and had no conversation with any one at said place. This testimony, we think, was hearsay, and it was not a part of the *res gestae.* It was not a declaration which was the immediate accompaniment of any act done at the time of the explosion which caused the injury, nor was it therefore in the nature of a verbal act explaining or illustrating the accident itself. It was simply and solely introduced for the purpose of showing that authority was given to do an act which was afterwards carried out. Such proof could only be made by the person who heard such authority given, and the statement that the agent said that such authority was given would be purely hearsay and inadmissible, if made in the absence and without

the hearing of the person from whom he claimed to have received such authority. *Fort Smith Oil Company* v. *Slover,* 58 Ark. 168.

The injury upon which this action is founded occurred prior to the passage of the act of the Legislature of March 8, 1907 (Acts, 1907, page 162), known as the "fellow-servant law"; and the defendant was therefore not liable for the injury which resulted from the unauthorized and negligent act of a fellow-servant. *Graham* v. *Thrall,* 95 Ark. 560.

3. In its answer the defendant pleaded the statute of limitation. This plea was based upon the ground that the amended complaint set forth a new cause of action, and that it was filed after the lapse of the statutory bar. But we do not think the amendment to the complaint set forth a new cause of action. It was only a statement of the original cause of action in a more complete manner, and merely amplified the original complaint. The original complaint stated that the cause of action was based upon the negligence of the defendant in causing the explosion, and that the act of negligence was in causing a dangerous accumulation of gas at the place where deceased was working. The pleading was open to the objection that it did not state specifically or with certainty how or why the gas accumulated. The negligent accumulation of the dangerous gases was the basis of the cause of action, and the breaking of the brattice was only a specific statement of how the gases accumulated, and thus a more specific statement of the averments of the original complaint of the negligence of the defendant. The amendment was therefore only a continuation of the original complaint, and it took effect as of the date when the latter was filed. 1 Enc. Plead. & Prac. 621; *Wright* v. *Walker,* 30 Ark. 44; *Brockaway* v. *Thomas,* 32 Ark. 311; *Kuhns* v. *Wisconsin, etc., Ry. Co.,* 76 Ia. 67; *Gordon* v. *Chicago, R. I. & P. Ry. Co.,* 129 Ia. 747.

For the errors above indicated the judgment is reversed, and the cause remanded for a new trial.

KIRBY, J., not participating.