HELENA HARDWOOD LUMBER COMPANY v. MAYNARD.

Opinion delivered May 29, 1911.

1. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE AND ASSUMED RISK DISTINGUISHED.—The defense of contributory negligence admits the

master's negligence while denying the servant's right to recover for an injury which would not have occurred but for his contributory negligence; while the defense of assumed risk denies the master's negligence because the master owed the servant no duty to protect him against risks which he assumed. (Page 384.)

2. SAME—DEFECTIVE APPLIANCE—CONTRIBUTORY NEGLIGENCE.—A servant would not be guilty of contributory negligence in working with an appliance known to him to be defective unless the danger was so obvious that no man or ordinary prudence would incur the risk under similar circumstances. (Page 385.)

3. SAME—DEFECTIVE APPLIANCE—ASSUMED RISK.—Where a servant voluntarily works with an appliance known to him to be defective, he assumes the risk thereof, and cannot ask the master to compensate him for the resulting injury. (Page 385.)

4. MASTER AND SERVANT—INJURY TO SERVANT—ASSUMED RISK.—An instruction, in an action for the negligent killing of a servant, which told the jury that the master was negligent in furnishing defective machinery, and that if the servant's injury was due to the defective condition of such machinery the defendant was negligent and liable unless the deceased servant was guilty of contributory negligence, was erroneous as excluding the defense of assumed risk. (Page 385.)

5. INSTRUCTIONS—CONFLICT.—Where conflicting instructions are given, the error is prejudicial. (Page 385.)

6. SAME—APPLICABILITY TO ISSUES.—Where the complaint in an action by an administratrix for the wrongful death of her husband did not allege the loss of parental care and training of the children as an element of damages, an instruction which permitted a recovery therefor is incorrect. (Page 385.)

Appeal from Phillips Circuit Court; *Hance N. Hutton,* Judge; reversed.

### STATEMENT BY THE COURT.

This suit was brought by appellee for damages for the wrongful death of the intestate, her husband, alleged to have been negligently caused by the appellant. It was alleged that at the time of the death of her intestate the defendant was loading logs on cars at Rondo in Lee County with a loading derrick or log loader (describing it) near railroad track. That the clamps on the guy ropes were negligently and unskillfully fastened, permitting the wires to slip through them and allowing the derrick to fall. That on the date her intestate was killed the clamps were readjusted by defendant's foreman and superintendent "in such a negligent,

careless and unskillful manner that the guy wire slipped through said clamps, thereby causing said derrick to fall.; that at that time T. A. Maynard, plaintiff's intestate, was an employee of defendant, and was ordered by defendant's superintendent to take a position and stand at end of railroad car that was being loaded; and, while plaintiff's intestate was obeying orders and exercising ordinary care himself, the derrick fell on him, crushing his skull and inflicting very painful injuries, from which he suffered great mental and physical pain for a period of 10 hours, resulting in death; that the injury and death of plaintiff's intestate was caused by the careless, negligent and unskillful manner in which said clamps were adjusted and placed upon said guy wires." The intestate's age was stated and his earning capacity, and damages in the sum of $20,000 for the benefit of the widow and children and of the estate were prayed.

The answer denied that defendant was loading logs with the loading derrick or log loader at the time of the injury, alleging that it was using skids and loading logs with a team; admitted that there was a loading derrick at the place, but denied that the clamps were readjusted and placed upon the guy wires by defendant's foreman and superintendent in a negligent, careless, reckless or unskillful manner; denied that said intestate, T. A. Maynard, was on the day of his death in its employ and engaged in loading logs with a log or loading derrick; denied that he was ordered and directed by the foreman and superintendent to take a position and stand upon the end of the railroad car for the purpose of assisting in loading logs, and that its agents or servants gave him any directions or instructions to do anything in reference to said log loader, other than not to use it, and all other material allegations of the complaint.

"And, further answering paragraph 9, it says that on the day of the 26th of July, 1909, said loading derrick or log loader was out of repair, was not being used, and plaintiff's intestate was advised and admonished that it could not be used with safety, and that he wilfully and deliberately, against the wishes and without the consent of defendant, insisted upon using said loading derrick, with the full knowledge that the same was not in a condition to be used, for the reason that the guy wires aforesaid were not securely fastened for want of proper implements with

which to fasten the same, and that this defendant had ordered
said implements from the city of Helena by telephone; that it
was not safe or feasible to undertake to use said loading derrick
until said guy wires were properly secured by additional clamps;
that said intestate was anxious to use said derrick in loading his
own logs to be shipped to persons other than the defendant, and
for that reason insisted that the loader be tried, assuring the
defendant that he was familiar with the use of loading derrick,
and that said derrick as it then stood could be safely used in load-
ing logs, and, in order to demonstrate that fact, undertook at his
own risk and under the protest of the defendant to use said der-
rick, with the result that the accident occurred of which' the
plaintiff complains." It alleged further that the death of May-
nard was occasioned by his own contributory negligence; that he
had nothing to do with loading defendant's logs with loader or
derrick, and was not present as an employee of the defendant
at the time.

The testimony tended to show that T. A. Maynard, the de-
ceased, was about 32 years old at the time of his death, with an
earning capacity of $150 per month, most of which was devoted
to the use and benefit of his family, and left him surviving his
widow and two children nine and five years of age; that he was
an independent contractor, furnishing logs to different lumbering
concerns, and that he had delivered some logs to defendant's
railroad at Rondo for it, and also had a few logs of his own at
this place.   On the day of the injury two officials of the Helena
Hardwood Lumber Company were upon the ground where the
logs were to be loaded, and had come to fix the derrick, and
attempted to use it for about an hour that morning in loading
logs.   One of the guy wires slipped loose, and they stopped, not
having enough clamps to go around; that the deceased was upon
the yard loading the logs on the cars with teams and negroes
after that.   The deceased went to the store and telephoned to
Helena for more clamps, and they came out on the evening train.
Mr. Engle and Mr. Pierce, the officers of the company, were
trying to fix the derrick, and the deceased was anxious to get
started to loading the logs with the derrick, and all were stand-
ing around while it was being fixed.   It was getting late.

The testimony then tends to show that, after the clamps

were put on, Pierce told Maynard to bring the negroes and mules up and go to work with the loader; that they all went in to take a drink of soda water, and Mr. Engle, the master mechanic of the Lumber Company, said, "Come on back; everything is fixed all right." Engle testified for the defendant that Mr. Harold Pierce was going to put on one more clamp, and Maynard said, "Let's go ahead and load these two cars, and we can fix this. The strain is all on these wires out here" (indicating wires other than the one that slipped). That Maynard was working for himself at the time, and was anxious to get the company's logs loaded that he might get to use the derrick for loading his own logs thereafter; that Maynard assisted in putting on the clamps after they came. They then began loading the logs with the derrick, the deceased standing on the north end of the car that was being loaded at the time of the injury, and Mr. Pierce was also on the car. When the third log was raised, the clamp on one of the wires gave way, the wire slipped through, and the derrick fell, and the wire or pole knocked Maynard off the car, crushing his skull. The clamp that gave way was not on the guy wire where the heavy strain came, nor had it been adjusted that day. It was new and not defective, and the wire pulled through and stripped the threads off it. Maynard lived for some hours, but never spoke after his injury, and the testimony was conflicting as to whether he was conscious and suffered pain. One of the witnesses of plaintiff stated "that he knew T. A. Maynard, and was working on the loading derrick the day he was killed. They used it for a while that morning and quit because they did not have enough clamps. The clamps came on the evening train. Mr. Engle was around there that morning. He called to us, and said he was ready to load the logs with the derrick. He told Maynard to steady the log that was being lifted. Then the derrick fell. Jess Walker and I were handling the ropes. Maynard was working with us. I guess he was hired. After the train came Maynard holloed to us, and said the clamps had come. At that time they were trying them on. We could see them doing this work."

The court, among others, gave the following instructions:

"No. 1. The law in this case is the law of master and servant. The Helena Hardwood Lumber Company was the master

and T. A. Maynard, if working for them at the time of his death, was the servant. The law does not make the master the insurer of the absolute safety of the tools, implements and appliances furnished by the master to the servant, but the law does make it the absolute duty of the master to exercise every reasonable care to furnish the servant with reasonably safe tools, implements and appliances with which to perform his work; and if the master fails to perform his duty to the servant in this respect, such failure is negligence in the eyes of the law, which gives to the servant, if living, and his administrator, if he is dead, a right to sue the master and recover damages for any injury to the servant brought about entirely or in part by such negligence. In this case it is admitted that the log loader was out of repair and unsafe; and if the injury was due solely or in part to the fact that it was out of repair and unsafe, then I instruct you that defendant was guilty of negligence, and your verdict will be for the plaintiff, unless you find deceased was himself guilty of contributory negligence."

The court gave all the instructions asked by the defendant, except the request for a peremptory instruction. The jury returned a verdict for plaintiff, assessing damages at $5,000, and from the judgment thereon it appealed.

*John I. Moore* and *J. M. Vineyard,* for appellant.

The evidence discloses the fact that Maynard had actual knowledge of the defective condition of the derrick. He assumed the risk. 95 Ark. 291; 81 Ark. 343; 77 Ark. 367. When a servant voluntarily accepts the place occupied by him, he cannot hold the master liable for injuries received by him because the place was not safe. 68 Ark. 316; 56 Ark. 332; 48 Ark. 346; 53 Ark. 117. Maynard knew, or by the exercise of ordinary care should have known, of the defective condition of the derrick. He was therefore guilty of contributory negligence, and the court erred in not so holding. 77 Ark. 398. The defenses of contributory negligence and assumption of risk may be pleaded in the same action and under the same state of facts. 77 Ark. 367. Instruction No. 1 given at appellee's request is erroneous because (a) it is abstract. 37 Ark. 580; 77 Ark. 567. (b) It ignores the doctrine of assumption of risk. (c) It amounts to a peremptory instruction, and is in direct conflict with instruc-

tion No. 3 given at appellant's request.  72 Ark. 31; 61 Ark. 141; 74 Ark. 437; 65 Ark. 64; 76 Ark. 224.

*J. T. Coston,* for appellee.

1.  If there was error in instruction No. 1 because it was silent on the question of assumed risk, such error was waived by the failure of appellant to make specific objection thereto on that ground.  127 S. W. 467; 126 S. W. 102; 65 Ark. 259; 112 S. W. 887; 117 S. W. 785; 134 S. W. 317; 132 S. W. 646; 134 S. W. 626.  The instruction must be read and construed in connection with all other instructions given in the case, among them being certain instructions given at appellant's request, in each of which the question of assumed risk was submitted to the jury, which cured the defect in the first instruction. 126 S. W. 1032; *Id.* 378, 379; 102 S. W. 102; 92 S. W. 250; 124 S. W. 1053; 1 Blashfield, § 391; 37 Ark. 254.

If appellant deemed the instruction to be erroneous and misleading because it ignores the question of assumed risk, and if Maynard was guilty of contributory negligence, appellant might have requested a peremptory instruction, but, having by the instructions requested, by it which were given, submitted these questions to the jury, it cannot now complain of an adverse verdict. 127 S. W. 717.

2.  The proof is that Maynard was ignorant of the defect; that he was not present when Pierce and Engle were fixing the derrick and adjusting the clamps on the guy wires, but was engaged in other work some distance away; and that when they got the derrick fixed Engle called to Maynard and told him that they were ready to load the logs with the derrick, that it was "capable of loading any log on the yard." Afterwards Pierce told him in Engle's presence that the latter said the derrick was all right, and they would have no more trouble with it.  He had the right to rely on these assurances without assuming the risk. 113 S. W. 358; 15 Pac. 490; 47 Pac. 248, 249; 58 N. W. 686; 35 Atl. 1000; 39 N. E. 325; 1 Labatt, Master & Servant, 1144; 126 S. W. 377; 56 Fed. 987.

3.  The servant does not assume the risk arising from the negligence of the master.  92 S. W. 246, 247; 48 Ark. 467, 468; 1 Sutherland on Damages, 17.

4. The objection to the court's instruction on the measure of damages was general only, and not specific. Appellant will not be permitted to urge here for the first time specific objections to the instruction. 56 Ark. 602; 133 S. W. 1134; 123 S. W. 797; 121 S. W. 947; 125 S. W. 136. If the instruction assumed that deceased suffered conscious pain, that error was cured by the giving of an instruction at appellant's request covering that point. 112 S. W. 887; 1 Blashfield, § 386; *Id.* § 391; 24 S. W. 663. The verdict is not sufficient to cover the present worth of the pecuniary loss alone, resulting from Maynard's death, leaving out of consideration conscious pain and suffering, and the loss of training, etc., of the children. 134 S. W. 1193.

KIRBY, J., (after stating the facts). It is contended that the court erred in giving said instruction No. 1, which it is claimed in effect directs a verdict for plaintiff if her intestate was working for the defendant unless he was guilty of contributory negligence, and disregards the defense of assumed risk on his part. Upon the other hand, it is contended by appellee that the jury were properly instructed, in separate instructions requested by defendant, both as to the law of assumed risk and contributory negligence, and that no prejudice could have resulted to plaintiff on account of giving said instruction No. 1, even if same was erroneous, and that it lost its right to object to said instruction for the failure to include proper mention of the defense of assumed risk by not making a specific objection thereto on that account at the time.

There is a distinction between the defense of assumed risk and contributory negligence, although both may be available in the same case. The one of contributory negligence, negligence on the part of the defendant being proved or admitted, denies the right of the plaintiff to recover damages for the injury which would not have occurred but for his own negligence contributing thereto; while the other arises out of the contract of employment, and does not impliedly even admit negligence on the part of defendant and attempts to defeat the right of action therefor, as the defense of contributory negligence does, for, if the injury was the result of the risk assumed by the servant, no right of action arises in his favor at all, since the master owed no duty to protect him

against dangers the risk of which he assumed as part of his contract of service.

A servant would not be guilty of contributory negligence in working at or with a defective appliance known to him to be defective, unless the danger was so obvious that no man of ordinary prudence would incur the risk under similar circumstances; while if he voluntarily worked with such appliance, realizing its dangerous condition, he would assume the risk thereof, and, having done this of his own accord, could not ask the master to compensate him for the resulting injury, even though he was not negligent in the operation of the appliance. *Choctaw, O. & G. Rd. Co.* v. *Jones,* 77 Ark. 367.

Said instruction No. 1 told the jury that the master was negligent in furnishing the defective log loader, and if the injury was due solely or in part to the fact that it was defective the defendant was guilty of negligence; and directed them to find for the plaintiff unless the deceased was guilty of contributory negligence. Being drawn in this way, it not only excluded the defense of assumed risk, which was sufficiently alleged in the answer, but was in conflict with the instructions given on defendant's part relative to assumed risk, and erroneous and prejudicial. Being in conflict, the instructions separately given could not be read together and present the law as a harmonious whole, as said in *St. Louis S. W. Ry. Co.* v. *Graham,* 83 Ark. 61; and the jury were left without proper guidance as to which instructions they should follow. *St. Louis, I. M. & S. Ry. Co.* v. *Hitt,* 76 Ark. 225.

Since the case must be tried again, it is proper to say that the instruction relating to the measure of damages was incorrect under the pleadings, the loss of parental care and training of the children not having been alleged as an element of damage.

For the error indicated, the judgment is reversed, and the cause remanded for a new trial.

Mr. Justice HART dissents.