## DARE v. HARPER.

Opinion delivered November 13, 1911.

1. MALICIOUS PROSECUTION—INSTRUCTION.—In an action for malicious prosecution it is error to instruct the jury to the effect that defendant

is liable if the prosecution was malicious, without regard to whether defendant was guilty or whether or not there was probable cause to believe him guilty. (Page 43.)

2.   INSTRUCTIONS—EFFECT OF CONFLICT.—An erroneous and misleading instruction is not cured by a correct instruction upon the same subject. (Page 44.)

3.   MALICIOUS PROSECUTION—MALICE—INSTRUCTION.—It was error to instruct the jury, in an action for malicious prosecution, that if the jury found that there was want of probable cause they had a right to infer malice. (Page 44.)

Appeal from Pope Circuit Court; *Hugh Basham,* Judge; reversed.

### STATEMENT BY THE COURT.

This suit was brought by J. P. Harper against J. W. Dare for an alleged malicious prosecution of him before a justice of the peace of Pope County.

The complaint alleges that the defendant falsely and maliciously and without probable cause charged the plaintiff by making an affidavit before a justice of the peace of said county with malicious mischief, in tying sticks in the mouths of two steers and tying their heads down to their feet with a chain, from the effects of which treatment they were greatly injured and one of them died; that said affidavit was made falsely and maliciously, with an intent to injure and harass and oppress the plaintiff; and that with the same intent defendant procured a warrant to be issued upon which he was arrested and deprived of his liberty for more than twenty-four hours and compelled to give bail; that the cause was afterwards transferred on a change of venue, and upon the trial thereof plaintiff was fully acquitted and discharged of said offense. That the plaintiff, at the time his arrest was caused, was arranging to move from said community to another State, and was detained for more than thirty days, and was damaged on that account in the sum of three hundred dollars. That, at the time defendant procured his arrest, he was innocent of the above charge, and "such malicious prosecution and false imprisonment was done, procured and had by the defendant corruptly, falsely, and without probable cause, and with the purpose and intent to injure the plaintiff in his body, mind, liberty and property." That he was greatly injured in his

credit and reputation thereby, and brought into public scandal and disgrace, and suffered great anxiety of body and mind to his damage in the sum of five thousand dollars, and was forced to lose time to his damage in the further sum of twenty-five dollars. Prayer for judgment for $5,175.

The answer denied each and every allegation in the complaint. That he had had plaintiff arrested upon the charge specified without reasonable cause. That he falsely or maliciously or without reasonable or probable cause charged plaintiff with a criminal offense, or that plaintiff had been damaged in the sum of five thousand dollars or any other amount by reason of his action.

It is conceded that appellant made the affidavit set out in plaintiff's complaint, upon which he was arrested, tried and acquitted.

The parties lived about five miles apart in the mountains in the northern part of Pope County, and Dare's oxen had been getting in plaintiff's field, which was not inclosed with a good fence. Upon complaint to him he tied the heads of his oxen down and tried to prevent their further disturbing the plaintiff.

The testimony tends to show that the two steers belonging to appellant had been raised in the neighborhood, and had got into Harper's field, of which he had made complaint to appellant, who assured him that he would attempt to keep them from disturbing him any further. Later on the steers were found with sticks tied in their mouths, like the bit in the mouth of a horse, the wire being tied to the ends of the stick and wrapped around the horns of the steers to hold them in place. They were seen near Harper's place, and the sticks seemed to be freshly put in, and Harper told one witness that he did not intend to have his crops eaten up by those steers. He told a couple of others that he knew how to fix cattle so they could not eat up any one's crop, and that he would fix Dare's steers so they would not eat up his crop. These witnesses saw the steers not long after this talk close to Harper's and they had sticks in their mouths fastened with wire, as already indicated. One saw them several times near Harper's field with sticks in their mouths; had been told by Harper that he threw rocks at the big red steer, which ran down in the hollow, and he

had not seen him since, and he thought he wouldn't bother him any more.

Appellee testified that the oxen had gotten into his field, and that he had complained to appellant, who tied their heads down, and that that failed to keep them out. That thereafter he took them to the home of the appellant, and never saw them again until about the time he was arrested. That he had sold his farm, and was ready to move away when arrested. That he had to move into a very poor house without any furniture, having sold his off, with his wife and seven children, all of whom had to sleep on the floor. That he was not guilty of the offense charged, and that appellant at the time of the trial sent him word that if he would pay him fifty dollars for the oxen he would drop the prosecution. That appellant acted as a lawyer at the trial, and made a speech against him; that he was never arrested before; that he and his family were greatly distressed and humiliated on account of the prosecution; that he was damaged one hundred dollars by being detained and prevented from moving to his new place where he was intending to go.

Appellant testified that, after he had been advised that his steers were getting into the field of appellee, he tried to prevent it. That later he heard of appellee's threats against the steers, and how he would fix them to prevent damage to his crops, and was informed by witnesses that they had seen his steers at Harper's field with sticks tied in their mouths. That he and his son hunted for them, but didn't find them for some time; found one finally near Harper's house with his leg nearly cut off with a chain, and he died in a few days. The other came to Harper's place, and had his head tied down with a wire around his legs, and was nearly dead. Said he never had Harper arrested to prosecute him or punish him, except what he thought Harper deserved for the treatment of his steers. "I believed then, and I believe now, that Harper tied those sticks in my steers' mouths, and I thought when I had him arrested that I had enough proof to convict him; never had him arrested in order to extort any money from him, but to make him comply with the law. I believe the one that died died from the treatment it had at the hands of J. P. Harper. I offered to let him pay me $50, what I paid for the steers, and take them. I never at any time had Jenkins and Harper arrested

through any malice whatever, but had them arrested because I firmly believed that they had tortured my cattle, so that one died and the other was nearly dead. I found the steers just a few days before Harper was arrested." Denied having told any one he would wait until Harper was ready to move, and that he would then have him arrested and bring him to time.

Being recalled, stated that he had sought the advice of an attorney, J. G. Gillette, before having appellee arrested, and stated all the facts of the case fully to him, and acted upon his advice in making the affidavit and proceeding with the prosecution. There was some further testimony tending to show that U. L. Meade had usually been appellant's attorney in his litigation before, and this was admitted by appellant, and Meade testified that he was not consulted about this case at all until appellant was sued.

The court, among other instructions, gave numbers four, five, eight and ten, over appellant's objections. Said instructions read as follows:

"4. If the jury finds from the evidence that there was want of probable cause to charge plaintiff with said crime or offense and causing his arrest, then the jury have a right to infer malice in the defendant in beginning such prosecution."

"5. You are instructed that a mere belief or suspicion on the part of the defendant, however honest such suspicion or belief may have been or however good his motives, was not sufficient within itself to warrant or justify the defendant in causing the arrest of the plaintiff, but there must have been probable cause sufficient to cause a reasonable and prudent person to act to warrant him in causing the arrest of the plaintiff."

"8. You are instructed that if you find from the testimony that the defendant caused the arrest of the plaintiff as charged in the complaint for the purpose of extorting from the plaintiff a sum of money, and not for the purpose of honestly prosecuting him for the offense charged, then you will find for the plaintiff; or if you find from the testimony that the defendant caused the law to be set in motion against the plaintiff to serve the defendant's own personal purpose, and not for an honest enforce-

ment of the criminal law, and upon probable cause, then you should find for the plaintiff."

The jury returned a verdict against appellant, and from the judgment he appealed.

*J. T. Bullock* and *J. A. Gillette*, for appellant.

1. The fifth instruction is not the law. It is not sufficient in prosecutions for malicious mischief to show want of probable cause alone, but the complainant must affirmatively show both malice and want of probable cause. 71 Ark. 351, 356.

2. There is no evidence on which to base that part of the 8th instruction which directs the jury to find for the plaintiff if they should find that Dare had Harper arrested to extort money from him. This instruction is also prejudicial in that it must have led the jury to believe that malicious conduct on the part of Dare would support the action, while in other instructions they are told that want of probable cause would sustain the action, however honest and sincere Dare may have been. The instruction leaves the impression with the jury that, if they find want of probable cause, they *must* infer malice. 26 Cyc. 51; 15 Ark. 355.

3. It was prejudical to appellant to permit appellee's counsel to read to the jury a complaint filed in another case wherein appellant was plaintiff, and was represented by a different attorney from the one employed by him in this case, and to argue therefrom that the attorney in the first named case was appellant's attorney, thereby seeking to overturn the defense set up by appellant that he had stated the case and sought advice of his attorney before instituting the criminal prosecution against appellee. 18 Fed. 312; 34 Fed. 473; 18 L. R. A. (N. S.) 50 71 Ark. 351.

*Brooks, Hays & Martin*, for appellee.

1. Appellant's theory of the case was fully presented to the jury in the instructions given at his request, and he offered or suggested none in lieu of the instructions objected to. They will be considered as a whole, and appellant will not be heard to complain that the court gave incorrect instructions where he has failed to offer and request the giving of correct ones in their stead. 85 Ark. 184; 80 Ark. 19; *Id.* 238; *Id.* 349; 87 Ark. 528; 92 Ark. 71.

2.   Counsel review the testimony and contend that there was no testimony at the trial of the criminal action to show the guilt of the defendant in that action, and no testimony in this case to show probable cause for the arrest and prosecution. Any unlawful act wilfully done to the injury of another is in a legal sense malicious, and proof of malice need not be direct, but may be inferred from circumstances.   32 Ark. 166; *Id.* 736; 73 Ark. 437.   And a jury may infer malice as a fact from proof of want of probable cause; and to constitute probable cause both belief and reasonable grounds  must unite.   63 Ark. 391, 392.   Good motives will not shield any one who charges another with crime upon a frivolous pretext.   15 Ark. 355.

KIRBY, J., (after stating the facts).   The foregoing · instructions are complained of, and we agree with the contention that the court erred in giving said instruction numbered eight. It in effect told the jury that if the defendant caused the arrest of the plaintiff, as charged in the complaint, for the purpose of extorting money from him, and not for the purpose of honestly prosecuting the suit for the offense charged,   they   should find for the plaintiff; or if they found from the testimony that he caused the law to be set in motion against the plaintiff to serve the defendant's own persona¹ purpose, and not for an honest enforcement of the criminal law, and upon probable cause, they should find for the plaintiff.

This instruction is contradictory in its terms and of other instructions, the first half of it being a complete instruction within itself and not a correct declaration of the law, and the second so carelessly drawn as to be confusing, if not misleading. The first part of it tells the jury that if the arrest was caused for the purpose of extorting money from the plaintiff, in effect maliciously, they should find against the defendant, without regard to whether he was guilty of the offense charged, or whether there was probable cause to believe him so guilty or not.   This is not the law.

In the case of *Kansas & Texas Coal Co.* v. *Galloway*, 71 Ark. 351, this court said:

"In malicious prosecutions it devolves upon the plaintiff to show affirmatively both malice and a want of probable cause upon the part of the defendant in instituting the prosecution complained of."

It is true, in the last part of the instruction, the words, "and upon probable cause," appear, but they are entirely disconnected from the first part of the instruction, which, at its conclusion tells the jury they will find for the plaintiff, in effect, if they shall find the prosecution was instituted for other than an honest purpose to enforce the criminal law.

Other instructions correctly declare the law on this point, but are in conflict, and do not remedy the error and render it harmless. *Helena Hardwood Lumber Co.* v. *Maynard*, 99 Ark. 377.

Complaint is made of instruction numbered six, it being claimed that it allows the jury to assess damages as compensation for loss of time and other damages actually suffered, and also punitive or exemplary damages if the arrest was caused to be made wilfully and maliciously, and might have misled the jury to believe that plaintiff could recover compensatory damages without proving that the prosecution which was instituted was malicious and without probable cause. While there is some ground for this contention, we would not reverse the case for the giving of this instruction, there being no specific objection made to it on that account, if the other instructions had correctly declared the law.

Although instruction numbered four is not complained of here, since the case must be tried again, we deem it well to say that said instruction is incorrect, and the giving of one of like kind was recently held to be reversible error in *L. B. Price Mercantile Co.* v. *Cuilla*, 100 Ark. 316.

We do not think it necessary to discuss the conduct of appellee's attorney in reading from a complaint not in evidence in this case, the name of another attorney who appeared as counsel for this appellant therein, than the one he claimed to have consulted before the institution of the prosecution, since it will probably not occur again upon the next trial.

For the errors indicated, the judgment is reversed, and the cause remanded for a new trial.