STATEMENT OF FACTS.
This suit was brought by appellee for personal injuries alleged to have been caused by the negligence of the oil company from the back-firing of a gas engine used in operating an oil well. *Page 703 
It was alleged that the engine died, and appellee and his co-workers had difficulty in starting the same, and removed the cap off the air mixer, as it would start more easily with the cap off, and that they succeeded in getting the engine started, and that the plaintiff reached over for the cap of the air mixer to replace it, and, when he did so, the engine back-fired, the explosion coming out of the open air mixer into his face, burning and damaging his eyes. It was alleged that the compression roller upon the rock arm of the gas engine was old, worn, and unfit for use, and was the cause of the back-firing, which condition of the compression roller was alleged as negligence on the part of the oil company.
Appellant denied that appellee was injured, and pleaded contributory negligence and assumed risk on his part.
Appellee testified that he was an oil fielder, roustabout and gang-pusher, and had been working in the oil fields for six years, in the digging department, as a roustabout and in pumping and in gang-pushing. That he was employed by the oil company as a roustabout, and "they are supposed to pull tubing, rods, and overhaul engines, and do general lease work." Had been working about two months before he was injured in June, 1925. That, on the morning he was injured, the gang was instructed to pull the well on Comb B-6, and, after they took the well off the beam and laid down two or three doubles of rods, the engine stopped running, about 30 or 40 minutes before noon, and that they came back to try to start it in the afternoon. "We kicked it over several times; wouldn't take the shot." Was not positive whether he started it next, or some of the other boys, "but, anyhow, I set the engine, took this top off the air mixer — I don't know whether I did it or somebody else. It was off, was over on the cylinder of the engine. So I set the engine, opened the air wide open; the top was off the mixer, and we kicked it through several times, and it fired and run off just as pretty as I ever saw an engine." Said the top was removed from the air mixer *Page 704 
because it was easier to start the engine that way, and that was the customary way of starting these engines, and "it has been my experience all Superior engines are customarily started with the top off." As the engine made five or six revolutions he released the compression and advanced the ignition in running condition, and, after that, he raised up and reached over to get the top to put on the air mixer, the engine back-fired, and exploded into his face and eyes. He examined the engine to ascertain the cause of its failing to start, "and all that I could see that was wrong with it was that the compression roller was worn, and nothing else." Said he had had six years' experience operating with engines; examined this one to see what was wrong, keeping it from starting, and only found that the roller on the rock arm was worn. The roller just revolves around the pin (and roller and pin were exhibited to the court). The pin is through the roller on the inside of the mouth of the rocker arm, and is made to revolve by an oblong shaped nut on the cam-shaft, and, as the oblong part hits this roller, it knocks the rock arm down, releases the exhaust valve, and sends the explosion out through the exhaust pipe.
Appellee said he had not known of the explosion from an engine back-firing through the air mixer after the compression had been released and the spark advanced, and did not know the effect of the roller being worn, but had since learned. "The pin wears the same as the roller, and, the roller and pin being worn, when the nut comes over and hits the roller, it does not knock the rock arm down far enough to release the exhaust valve and let the explosion out through the pipe, and causes it to come back out through the air mixer." Nothing of the kind had occurred before in his experience in the oil fields.
The testimony shows that the pin and roller were continued in use satisfactorily for a year and a half after the injury occurred, and were exhibited to the jury, and they have been brought to the court here. An expert *Page 705 
testified that the pin and roller were in as good condition as new ones; that there was not more play between the roller and pin on which it revolves than was necessary for oiling, and it does appear now to be but little worn, probably 1/32 of an inch, upon examination here.
The undisputed testimony shows that this pin and roller had nothing to do with the firing or timing of the engine, and could not cause the back-fire. It was also undisputed that, if the top had been on the air mixer, the explosion from the back-fire could not have come out of it, and the appellee admitted that he could have reached and picked up the top without bringing his face within two or three feet of the air mixer, and that, although be said he was in a hurry to get it finished, he also stated that nothing prevented his even going around the engine and putting himself in a different position entirely out of the way of danger from the explosion, or, without changing his position, from keeping his face away from over the open mixer in reaching for the top. Said he supposed he did it unthoughtedly, and that he had not known before of any explosion from a back-fire coming through the air mixer after the engine was started. He said his eyes were as good as anybody's before they were burned by the explosion; that he suffered pain several days thereafter, and had a dull headache, which interfered with his work. He stated, on cross-examination, that he had worked there for defendant about one and one-half months before the injury, was an experienced man around a gas engine and oil field, and acquainted with the equipment and workings of machinery, and also made the following answers:
"Q. Why did you stick your face over there? A. Well, the position I was in and where the cap was, I was forced to reach over there and pick it up. Q. Why didn't you get in another position? A. I was in a hurry — unthoughted, reached over there to get the cap. Q. Just unthoughtedly reached for it and got it, is that it? A. Yes sir. Q. Wasn't thinking about it. Now, then, you necessarily take that cap off to start the engine? *Page 706 
A. Yes sir, it's customary to do it. * * * Q. I understand that, but what were you in a hurry for? A. Well, a man gets in a hurry with your work, or anything. Q. Did you have any special reason to hurry? A. Well, no. Q. Nothing but just pursue your work? A. Just pursue our work. * * * Q. Why didn't you go around the mixing chamber and put it on there? A. I just didn't do it, unthoughtedly. A man would have to walk plumb back around over here and put it on. * * * Q. I say, can't you go right there now and put the top over here, and right around here, and get it without getting your face in three feet of that mixing chamber (indicating)? A. I can do it, yes sir. Q. But yet you didn't do that? A. Didn't do it." * * *
Said that he had been paid all the time since the injury, but one day, until the company stopped his pay; that he was now making $15 a month more wages than when he worked for the company. Admitted that one of his eyes was affected before the injury.
Two of the physicians testified that they found no scar on the eyes from the burn, but that pterygium is due to inflammation and might arise from any sort of irritation, and develops slowly, and might be caused from a burn that would leave no scar.
Dr. Mitchell, who had examined the eyes of appellee shortly after the explosion, was not allowed to testify over his objection, and complaint is made of error committed in excluding this testimony, and also in refusing to give certain instructions, one for a directed verdict, and from a judgment of $500 this appeal is prosecuted.
(after stating the facts). It is earnestly insisted that the evidence is not legally sufficient to support the verdict, and that the court erred in refusing to give appellant's requested instruction No. 1 for a directed verdict. *Page 707 
There is very little conflict in the testimony. It is undisputed that it was not necessary to remove the top from the air mixer in order to start the engine, but that it was not unusual — was in fact customary — to do so, the engine being started more readily when it was done. The appellee was an experienced workman, and understood the operation of such engines, and undertook to start this one in this customary way. He said it could be done more easily by removal of the top from the air mixer. It is not complained that the appellant was negligent in not warning him of the danger incident to the service performed, but only that it filed in its duty to exercise ordinary care to furnish safe machinery and instrumentalities for the performance of his work. He could have easily picked up and replaced the top of the air mixer without bringing his face over the mixer or near enough thereto to have been injured by an explosion from a back-fire of the engine coming out of the mixer, and none could have escaped that way had the top not been removed for starting the engine, as he also knew. There was no emergency requiring him suddenly to select the method for doing the work, or excusing him from attempting the least safe way. He was working under his own initiative or direction in starting the engine, working according to his preference at the time, and, being familiar with this method of doing the work, and necessarily knowing and appreciating the danger incident thereto in attempting it, he must be held to have assumed the risk. St. L. I. M. S. Ry. Co. v. Wiseman, 119 Ark. 477,177 S.W. 1139; Henry Wrape Co. v. Huddleston,66 Ark. 239, 50 S.W. 452. He carelessly and unthoughtedly brought his face over the air mixer in reaching for the top to replace it, and without any necessity for doing so, and, although he stated he had not known of any explosion from a back-fire coming through the open air mixer after the engine was started, he knew that the top was put on such mixer to prevent the explosions from back-fire coming out that way, and also that the top was off, necessarily exposing him to any danger that might result therefrom. *Page 708 
There does not appear to be any reasonable excuse for the careless manner of bringing his face near to and over the open mixer in attempting to replace the top thereon, and in so doing he was guilty of negligence contributing to his own injury also, and but for which the injury would not have occurred.
The court erred in not directing a verdict for the appellant, and the judgment is reversed and the cause dismissed.