L. R. HUDGINS AND GENE HUDGINS, D/B/A L. R. HUDGINS AND SONS v. LONNIE MAZE

5-4768                                          437 S.W. 2d 467

Opinion Delivered February 3, 1969

[Rehearing denied March 10, 1969.]

*Pearson & Pearson* for appellants.

*Lewis E. Epley, Jr.* for appellee.

J. FRED JONES, Justice.    Lonnie Maze filed a damage suit in the Madison County Circuit Court against L. R. and Gene Hudgins, d/b/a L. R. Hudgins and Sons, for personal injuries sustained by Maze when his hand was injured between a V belt and pulley on an electric motor while he was employed by Hudgins.    A jury trial resulted in a judgment for Maze in the amount of $5,-000 and Hudgins has appealed.

Appellants are engaged in the egg producing business and operate several large laying houses.    In three of the houses electric motors are used to operate fans, egg belts, feed conveyors and scrapers which are used to remove litter from the floors.    All electric motors used in the laying houses are equipped with guards over the belts and pulleys except those motors which run the fans and the ones which operate the scrapers.    Appellee Maze worked in one of these houses and as a part of his duties he cleaned litter from the laying house floor by use of electrically operated scrapers.

Each electric motor operates two scrapers attached to a single cable.    The cable is wound into five grooves on the surface of two adjacent and horizontal steel drums or cylinders, referred to as a "winch."    The winch is turned either direction by a reversible electric motor with a two-way or reversible switch located three or four feet above the winch and motor.    The power from the electric motor is transmitted to the winch through a V belt and pulleys attached to the motor and to the gears

on the winch. As one scraper is being loaded the other one returns empty and the process is reversed by reversing the motor and the direction the cable travels around the winch.

In the usual operation a loaded scraper would occasionally hang on something or stick to the floor, and when it would break loose in the course of operation, the sudden excess slack in the cable would cause the cable to jump out of its groove on the winch drum and it would become necessary to stop the motor, pry the cable to the cylindrical surface of the winch drum and wind the cable back into its groove on the drum by manually pulling the V belt between the motor and winch, thus turning the pulleys as well as the motor and winch. The appellee was engaged in this operation when he was injured.

On the day of the injury Clarence Harshfield was working in the laying house with the appellee. Harshfield was first employed by appellants to gather up eggs in baskets, but he had been assigned to cleaning the laying house on the day appellee was injured. In operating the scraper equipment, Harshfield caused a cable to come off the winch and he sought appellee's assistance in replacing the cable. The appellee pried the cable partially back onto the winch with a screwdriver and directed Harshfield to hold the screwdriver under the cable while appellee turned the pulleys and belt. Appellee told Harshfield not to touch the switch to the motor, but while the appellee was in the process of turning the belt and pulleys, Harshfield turned the switch and started the motor. Appellee's right hand was caught between the belt and a pulley, thereby amputating a part of one finger and severely injuring another.

In his complaint the appellee alleged unsafe working conditions consisting of unguarded belts and pulleys on electric motors and also the hiring and retention of an incompetent fellow-servant, or co-employee, in the

person of Harshfield, as proximate causes of appellee's injury. The appellants answered by general denial and they affirmatively pleaded contributory negligence and assumption of risk. The appellants have designated the following points upon which they rely for reversal:

"The trial court erred in refusing to instruct the jury to return a verdict for defendants on the issue of lack of proper guards on the machine and on the issue of plaintiff's assumption of risk of dangers because of the lack of guards.

The trial court erred in refusing to instruct the jury to return a verdict for defendants on the issue of the incompetency of Clarence Harshfield and on the issue that defendants did not know that Harshfield was an incompetent employee, if, in fact incompetent.

The trial court erred in refusing to instruct the jury to return a verdict for the defendants on the issue that plaintiff assumed the risks arising from the incompetence of Harshfield.

The trial court erred in refusing to instruct the jury to return a verdict for the defendants, on all the issues, and to return a verdict for defendants for reason that negligence of Harshfield, as a fellow-servant, was sole cause of injury and for which negligence defendants are not liable."

It is thus seen that on all four of its designated points, the appellants allege error in the trial court's refusal to instruct the jury to return a verdict for the appellant. We conclude that there was sufficient evidence to go to the jury on all four points.

In *Hawkins* v. *Missouri Pacific Railroad Company, Thompson, Trustee,* 217 Ark. 42, 228 S.W. 2d 642, we said:

"A directed verdict for the defendant is proper only when there is no substantial evidence from which the jurors as reasonable men could possibly find the issues for the plaintiff. In such circumstances the trial judge must give to the plaintiff's evidence its highest probative value, taking into account all reasonable inferences that may sensibly be deduced from it, and may grant the motion only if the evidence viewed in that light would be so insubstantial as to require him to set aside a verdict for the plaintiff should such a verdict be returned by the jury."

As to assumption of risk, Prosser, Law of Torts, 3rd ed., § 67, p. 453-54, says:

"... [A]ssumption of risk is a jury question in all but the clearest cases. Citing, *Pona* v. *Boulevard Arena,* 1955, 35 N.J. Super. 148, 113 A. 2d 529."

From the *Pona,* case, supra:

"It is well settled that a dismissal by the court on the ground of assumption of risk ... may only be entered in the clearest case where a contrary hypothesis is not fairly admissible. * * * The elements 'must be of such a prominent and decisive character as to leave no room for a difference of opinion thereof by reasonable minds.' * * * The facts must appear clearly and convincingly, or as the necessary and exclusive inferences to be drawn by all reasonable men in the exercise of a fair and impartial judgment; otherwise the question is for the jury."

*Spradlin* v. *Klump,* 244 Ark. 841, 427 S.W. 2d 542, relied on by the appellants is distinguished on the facts from the case at bar. In that case Spradlin stuck his hand into the moving parts of a mechanical hay baler

operated by a power take off from a farm tractor. He was manager of the whole operation and knew more about a hay baler than his employer did. Spradlin simply stuck his hand into the machinery while it was running rather than walk to the tractor and disengage the gears or turn the switch off and stop the machinery. In that case we affirmed the trial court who directed a verdict for the defendants in the first place, and in doing so, we said:

> "... [T]he danger presented by the moving rollers was completely open and obvious. Spradlin readily admitted on cross examination that he fully appreciated the peril involved in letting his hand get too close to the moving parts of the baler."

In *Cockerham* v. *Barnes*, 230 Ark. 197, 321 S.W. 2d 385, the appellant employer directed the appellee and a fellow-employee to make some repairs on an irrigation pipe. The plan, as outlined by appellant, contemplated that the fellow-employee would close the shut-off valve through which the water passed from the main line to the lateral, while appellee went across the field to remove the plug from the end of the lateral. Prearranged signals between the employees apparently were not understood, and when the appellee removed the plug from the end of the lateral, he was severely injured due to the unexpected water pressure.

On appeal from a judgment for personal injuries, the appellant insisted that appellee's injury was due solely to the negligence of a fellow-servant for which the employer was not liable at common law, and that appellant was entitled to a directed verdict. In affirming the judgment, this court said:

> "It is settled, however, that the fellow servant rule does not relieve the master from liability if his own negligence is a contributing cause of the

injury.    Shearman & Redfield on Negligence (Rev. Ed.), § 196.

    ... Even though Barnes had helped to install this system the jury was not compelled to conclude that he should have realized that to stand in front of the plugged lateral was somewhat like standing before a loaded cannon.    * * * It was for the jury to say whether the defendant was guilty of negligence that was a proximate cause of the injury.''

In *E. L. Bruce Company* v. *Leake,* 176 Ark. 705, 3 S.W. 2d 988, the appellee, a brakeman, was injured when the train car upon which he was standing, his feet in the stirrup, moved against a stump which he alleged had been negligently left standing close to the track. The appellant contended that the appellee had assumed the risk, but in affirming a judgment for the appellee, this court said:

    '' 'When a servant enters into the employment of any one, he assumes the ordinary risks and hazards which are incident to the service and this includes all those defects and dangers which are obvious and patent.    He assumes all the risks which he knows to exist and all those which are open and obvious.'

    The above is a correct statement of the law, but it will be observed that it refers to the ordinary risks and hazards incident to the service.    And it is true that he assumes the obvious risks, but, because an obstruction is near the track and the object itself or obstruction is obvious, does not necessarily mean that the risk or hazard is obvious. The servant does not assume any risk or hazard caused by the negligence of the master, unless he knows that the risk or hazard exists.

    *    *    *

    This court has many times held that, while an employee assumes all the risks and hazards usually

incident to the employment he undertakes, he does not assume the risk of the negligence of the company for whom he was working, or any of its servants. He has a right to assume, not only that the master will perform its duty, but he has a right to assume that each of the other servants will perform their duty, and if, while in the exercise of ordinary care, he is injured either by the negligence of the master for whom he works or by the negligence of any other servant of the master, he has a right to recover.''

There is no question that appellants knew, or by the exercise of reasonable care should have known, that the scrapers sometime hung causing the cable to jump off the winch in this case. The appellants knew, or should have known, that when this happened the appellee, or whoever replaced the cable, did so by prying it up with a screwdriver, or other instruments, and then slowly turning the cable back onto the winch by manually turning the winch through pulling on the V belt between the two pulleys by hand. As a matter of fact, appellant Hudgins testified that it would not be practical to place a guard over the belt as the guard would have to be removed in order to get to the belt. We are of the opinion that the jury could have reasonably concluded from the evidence in this case, that the belt and pulleys were purposely left unguarded for the very purpose of permitting employees to conveniently reach the belt for the purpose of manually turning the winch in reinstalling the cable when misplaced.

We are of the opinion that the jury could have reasonably found that this operation was comparatively safe when carefully done while the motor was not running, but be that as it may, it was a question for the jury as to whether appellants could have, and whether the appellants should have, placed guards over the pulleys to protect a workman whose known duty it was to re-

place the cable by pulling on the belt between the two pulleys.

We cannot say that there was no evidence from which the jury could have found that the fellow-employee Harshfield was incompetent and that the appellants knew, or should have known, of his incompetency.

At the time of appellee's injury, Harshfield's full-time job was to clean out the chicken houses and spread the litter from a truck onto the land. Harshfield's competency or incompetency in gathering eggs in baskets or driving a truck and spreading chicken house litter on the land is not in question here. The incompetency complained of in this case is in connection with the operation of the scrapers in general, and putting the cable back on the winch in particular, by pulling the V belt on the motor by hand as was required.

Harshfield was operating the scraper, he failed to loosen the scraper with a 2x4 appellee kept handy for that purpose. He caused the cable to get off the winch and he was required to put it back on if he could. He called appellee to assist him in putting the cable back onto the winch. The appellee proceeded as he had previously done when he, himself, was operating the scraper. He placed a screwdriver under the cable and told Harshfield to hold it while he, appellee, turned the belt. He told Harshfield to keep away from the switch and while appellee was pulling on the belt, Harshfield engaged the switch and started the motor.

The appellee testified that Harshfield was careless and reckless. Their supervisor, Mr. Franks, testified that Harshfield was not a good man to have working around machinery; that he didn't understand machinery very well. Juanita Evans, another fellow-employee, testified that Harshfield would "just be talking to me and just kind of absent mindedly turn off the switch that was running my belt, and sometimes I would have

to tell him to turn it back on and sometimes he would flip it up and then back on.'' She says that she reported this to supervisor Franks. Appellant Hudgins testified as to Harshfield's competency in operating the scrapers by pointing out that all he had to do was throw the two-way switch. It was not Harshfield's *competency* in throwing switches that was complained of in this case, it was his *incompetency in throwing switches at the wrong time.*

It is not for us to determine whether Harshfield was or was not a competent employee. The question before us is whether the trial court erred in refusing to withdraw that question from consideration by the jury by directing a verdict for the appellants. We are of the opinion that the trial court did not err on this point and we conclude that the jury could have reasonably found that the proximate cause of appellee's injury was the unguarded belt pulleys coupled with Harshfield's incompetency in throwing electric switches at the wrong time.

In Prosser, Law of Torts, 3rd ed. § 67, p. 453, in discussing assumption of risk and contributory negligence is found the following:

> ''Where they have been distinguished, the traditional basis has been that assumption of risk is a matter of knowledge of the danger and intelligent acquiescence in it, while contributory negligence is a matter of some fault or departure from the standard of conduct of the reasonable man, however unaware, unwilling, or even protesting the plaintiff may be.''

Contributory negligence is measured by the actions of any reasonably prudent person under same or similar circumstances, and assumption of risk is measured by the acts of the particular individual in the light of his own knowledge of the risk involved. So, from all the

evidence in this case, we are unable to say that reasonable minds could not differ as to the fact issues raised by the pleadings and proof, and we conclude that the judgment of the trial court should be affirmed.

Affirmed.

BROWN, FOGLEMAN and BYRD, JJ., dissent.

JOHN A. FOGLEMAN, Justice.     I would reverse the judgment of the trial court and dismiss the complaint.

I cannot imagine a clearer case of assumption of risk by an employee, even when the evidence is given its strongest probative force in his favor and all possible inferences are drawn in his favor.

Appellee had considerable experience working around machinery.    He knew that the motors, pulleys and belts in question did not have guards on them.    He knew of the tendency of the scraper to hang.    He well knew that the cable had a tendency to jump off the winch when the scraper was not properly broken loose. He undertook, on this occasion as he had done before, to replace the cable on the winch by prying it upward with a screwdriver and running it on with his hand while the motor was not running.    He was aware of the danger inherent in attempting this operation while the motor was running and warned his fellow servant not to close the switch that would activate the motor. He continued to work around the equipment and undertook to remedy the situation which arose on the day of his injury in spite of his awareness of all the dangers involved.    He admitted testifying in a discovery deposition that he knew that the machine was not safe because of lack of safety devices and guards but that he did not report this fact to anyone.    He also admitted having said that he knew the situation was dangerous when he undertook the work he was doing when injured and that he might hurt his hand.    He also stated on the

discovery deposition that he continued to work on this machine without objection on his part and without being led to believe that it was safe. He stated that he was willing to continue his work realizing the hazards.

I think that it is equally clear that Maze assumed the risk arising from the incompetence of his fellow servant Harshfield. He undertook to replace the cable on the winch in response to Harshfield's request for help. Appellee admitted knowing that Harshfield was a reckless and careless employee through personal knowledge and observation while working with him before the injury. He admitted that he knew he could not depend on Harshfield and had to watch him and that it was dangerous not to watch him.

It has long been settled in this state that when it appears to be clear that the servant has knowledge of and appreciates the danger incident to his work, or that the danger is so obvious or apparent that knowledge and appreciation thereof should be imputed to him, then the court should declare as a matter of law that the servant is not entitled to recover. *Brackett* v. *Queen*, 162 Ark. 525, 258 S.W. 635; *Gaster* v. *Hicks*, 181 Ark. 299, 25 S.W. 2d 760.

The same rule applies even though the danger arises from the negligence of the master. *Western Coal & Mining Co.* v. *Corkille*, 96 Ark. 387, 131 S.W. 963. If the servant continues to work after he discovers the defective conditions, he assumes the risks of his continued service. *Greenville Stone & Gravel Co.* v. *Chaney*, 129 Ark. 95, 195 S.W. 13.

If a servant voluntarily works with an appliance known to him to be defective, realizing its dangerous condition, he assumes the risk thereof and cannot recover from the master for the resulting injury. *Helena Hardwood Lumber Co.* v. *Maynard*, 99 Ark. 377, 138 S.W. 469. If the dangerous condition was apparent to

appellee and he proceeded to use the machinery without complaint, he assumed the risk of injury incident to its use. *Hall* v. *Patterson,* 205 Ark. 10, 166 S.W. 2d 667.

The employment and retention by a master of a servant who is incompetent because of his habits, or for any other reason, with actual or constructive knowledge of the servant's unfitness is equivalent, for the purpose of determining the master's liability, to furnishing a defective appliance. *Arlington Hotel Co.* v. *Tanner,* 111 Ark. 337, 164 S.W. 286. The same rules governing the fixing of liability, including those applying to assumption of the risk by a fellow employee are applicable. See *St. Louis, I.M. & S. Ry. Co.* v. *Hawkins,* 88 Ark. 548, 115 S.W. 175; 35 Am. Jur. 774, Master & Servant § 347. Reason and logic support this analogy.

There are several cases decided by this court which are strikingly similar to this one. In *Fullerton* v. *Henry Wrape Co.,* 105 Ark. 434, 151 S.W. 1005, it was held that an experienced operator of a circular saw in a lumber mill assumed the risk of fatal injury by a piece of lumber being thrown back by the saw, due to want of a guard and to the fact that a device designed to prevent "pinching" of pieces being sawed was insufficient, especially where he was shown to have realized the danger through having made complaint about the defective condition before the accident occurred. In *Pekin Stave Co.* v. *Ramey,* 108 Ark. 483, 158 S.W. 156, this court said:

"* * * The testimony shows conclusively that he knew the manner of operation of the cut off saw which was open and obvious; that he was a grown man of reasonable intelligence, and made no complaint about the operation of it without a shield or hood, and, if the stave company was negligent in so operating it, he assumed the risk incident to its operation, and could not hold the master liable for injuries received by him on account of its being operated without a hood. * * *"

In *Ward Furniture Manufacturing Co.* v. *Weigand*, 173 Ark. 762, 293 S.W. 1002, this court reversed a judgment for error of the trial court in not directing a verdict for the employer. The reversal was based upon the uncontradicted evidence of the employee, which this court said showed that he was not entitled to recover by reason of assumption of the risk. The employee's testimony was outlined as follows:

"* * * The substance of the proof is that appellee had been working for the appellant continuously from the 28th day of December, 1921, until the date of his injury, which was on October 22, 1925; that he was injured on one of the older dovetail machines, which he had operated at intervals from the time he began working for appellant to the date of his injury. When he first began working on this machine, it was located on the floor of the factory above, but, for approximately two years before the date of the injury, it had been located on the ground floor of the factory, and had a different instrumentality for switching the belt to the idlepulley, but he had operated this machine on the lower floor at intervals as much as three or four hours at a time. He knew the machine did not have a guard on it to protect his hand from getting into the cog-wheels, and he knew that it never had had such a guard; he knew the location of the shifting lever relative to the cogs, that is, how close the end of the shifting lever came to the cogs; he knew that, if he got his fingers into the cogs, he would be injured, and says that, when he attempted to shift the belt at the time of his injury, he saw the shifting lever. He had never registered any complaint to appellant or to any of its officers or agents about the absence of a guard or that the machine was dangerous to operate in its then condition. He admitted that he was an experienced employee, thirty-five years of age, and represented himself to be an experienced machine man when he applied

for employment with appellant, and had been engaged in operating this and other machines for appellant for the past four years. There was a big electric light right over the machine, only a short distance above it, and was burning at the time appellee was hurt."

In *Standard Oil Co.* v. *Gray*, 175 Ark. 702, 300 S.W. 405, it was held that the trial court erred in not directing a verdict for the master. There an oil field roustabout, working on his own initiative in starting a gasoline engine, who was familiar with the method of starting the engine and necessarily knew and appreciated the danger incident thereto, was held to have assumed the risk of injury in removing a cap from the air mixer on the engine. If, in fact, Maze had complained of the lack of guards, or of Harshfield's recklessness and carelessness, he would not have been relieved from the operation of the doctrine of assumption of the risk unless he continued in his employment upon the master's promise to remedy the condition.

In view of our previous holdings, I do not see how we can say that there was any jury question in this case.

I am authorized to state that Mr. Justice BROWN and Mr. Justice BYRD join in this dissent.