# CHARLESTON.

JESSIE SOWERS, *Admx., etc.* v. THE VIRGINIAN RAILWAY COMPANY

(No. 5589)

Submitted May 4, 1926.    Decided May 11, 1926.

1. MASTER AND SERVANT—*Representative Alleging Wrongful Death Because of Known Mental Incapacity of Employee in Dangerous Occupation Has Burden to Prove All Elements by Preponderance of Evidence.*

   Where a plaintiff's personal representative seeks to recover damages for wrongful death of his decedent on the theory that the deceased was incapable by reason of his mental condition of appreciating the dangers of his employment and taking care of himself, and that an agent of the defendant company, with knowledge of that fact, or of facts and circumstances sufficient to put him upon inquiry in regard thereto, employed and continued him in said company's employment, in a dangerous and hazardous occupation, and he was killed while so employed by reason of such mental incapacity, the burden is upon the plaintiff to prove all said

elements of his claim by a preponderance of the evidence before he can recover.   (p. 587.)

> (Master and Servant, 39 C. J. § 1209.)

2.  SAME—*Master Without Knowledge of Facts Putting Him on Inquiry May Presume Employee is of Sufficient Mental Capacity.*

>  In the absence of knowledge of any fact indicating that the employee is of inferior mental incapacity or in the absence of knowledge or circumstances sufficient to put the master upon inquiry he is entitled to presume that the employee is of sufficient mental capacity.   (p. 590.)

> (Master and Servant, 39 C. J. § 408 [Anno].)

3.  SAME—*Verdict Held Properly Directed for Employer on Issue of Employment of Mentally Incompetent Workman.*

>  A case where the trial court correctly applied the doctrine, that where a court would not, upon the evidence permit a verdict for the plaintiff to stand, it is its duty upon motion of the defendant to direct a verdict for the defendant.   (p. 590.)

HATCHER, JUDGE, absent.

> (Master and Servant, 39 C. J. § 408 [Anno].)

> (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Mercer County.

Action by Jessie Sowers, administratrix of A. W. Sowers, deceased, against the Virginian Railway Company.   Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*Hugh G. Woods* and *John R. Pendleton,* for plaintiff in error.

*E. W. Knight, Williams, Loyall & Tunstall, H. C. Ellett,* and *Martin & Wingfield,* for defendant in error.

WOODS, JUDGE:

This action was instituted by an administratrix to recover for the wrongful death of her decedent while in the employment of defendant company.   After all of the evidence, both for the plaintiff and defendant, was introduced, the court, on motion of defendant, instructed the jury to find for the de-

fendant. Judgment was entered thereon, and plaintiff now prosecutes this writ of error.

A. W. Sowers, decedent, during his employment by the defendant company (which covered a period of three years) as a "pipe fitter", was, in February, 1921, adjudged insane and committed to the asylum at Spencer. Three weeks later, or March 27, 1921, he was discharged as "cured" and returned home. He was taken back immediately into the employment of defendant company, and continued to work for it in their yards at Princeton until in July, 1922, when a strike of the shopmen was declared. He sought and found employment elsewhere. On the 14th of November, 1922, being then out of work, and realizing that he had a family and father to support, he went back to defendant's shops to seek work. The strike was still in effect. He was employed, and on the following morning went to work. On Thursday, Friday and Saturday he continued to work at the shops with his usual skill and care. What happened in connection with his employment, in regard to his conduct, leading up to the time of his death, is told by Norris Perry, his helper, who testified for the plaintiff, as follows:

> "Well, about one o'clock I saw Mr. Thomason, or just a little after twelve thirty. Mr. Thomason came to me and says 'I have a baggage car over there that I want as soon as we can get it, and Mr. Sowers is working on it to repair the steam line, and I want you to help him take out that line and put another in, and he says he seems melancholy, downcast, and I want you to endeavor to cheer him up', and I went over there on this baggage-car track and Mr. Thomason came over there while we were there and showed us what he wanted repaired, and we taken it off and taken it to the shop——
> "Q. You say Mr. Thomason came over there. Was that the foreman?
> "A. Yes sir, Mr. Thomason, the foreman, came over there and gave us instructions what he wanted done with it, and Mr. Sowers and myself taken it off and taken it to the shop and we taken the old pipe and used it as a pattern and measured it and

cut a piece of pipe the right length and threaded it at each end and put it in the fire and bent it to conform to the alignment of the car, and that took up about an hour of our time, and that was about two o'clock then, or two thirty, I don't know exactly how much time it taken us, but a good bit of time, and in a few minutes Mr. Sowers asked me had any of the strikers ever said anything to me about working down there, and I said 'Yes sir, but I don't pay any attention to any such thing as that'. And he says 'Well, they are always talking to me trying to make me quit work, or trying to get me to quit', he says 'I don't know what to do about it,' he says 'I am worried', and he was standing there he says 'They are always after me about it', and he was standing there and he laid down or threw himself across one of the benches and he said 'God help me if I am a sinner', he was rather much of a Christian and Christian man, and he couldn't bear the thought, I guess, of them telling him he was a sinner, and he got up and said 'They have persecuted me worse than Jesus Christ.' I don't know what he meant but those were his words, and I had some fruit, an apple there, and I gave him one knowing he was fond of fruit, and he stepped out and said 'I will be back in a little while'. He said he was going to the toilet * * * two hundred feet away and he left, and in about fifteen minutes, I will say, I guess that was about the length of time, he didn't come back and I thought he—I said to Mr. Thomason, he just came in the shop, and I said 'Have you seen Mr. Sowers?' and he says 'Where is he at?' and I said 'I don't know', and he said 'You hurry up and find him, we have got to finish that work, you go find him'."

Perry went in search of him and found him dead in an entirely different part of the yard, a quarter of a mile away, where he had no business. The cause of his death is left to conjecture. Supposedly, he was struck by a switching engine, although no one knows just how the accident happened. The foregoing evidence was all of the plaintiff's case relied upon to charge the defendant foreman with sufficient knowledge to put him upon inquiry as to the mental condition of the servant.

Upon the question of whether Sowers was insane, a number of plaintiff's witnesses testify to the fact that deceased was deeply religious; that he took an active part in church work; and that he had a great desire to be held in esteem by his fellow men. On the night of the 14th of November (a few hours after his employment) certain agents of the striking shopmen visited Sowers to question him concerning his intention to return to work. Some of these visitors were also fellow churchmen. They testify that Sowers seemed excited. One of the brethren arose in prayer meeting on Wednesday evening (November 15th) and denounced deceased for going back to work, but admonished his auditors not to hold it against him as he was not responsible. Others stated that Sowers had a peculiar glare in his eyes like he was looking at nothing.

At Sunday School, two days prior to resuming said employment, while the pastor was talking, deceased arose uninvited and read a paper on some religious topic which he had prepared. A fellow workman saw him the day before he was killed and on asking him if he had returned to work, received the reply that he had come back "to make a few million", and that during said reply Sowers commenced "sort of dancing". Sowers' wife testified that he had another "spell" in June, 1922. This spell she states was so slight that it was not noticeable to his own people. The only treatment administered was given him by his wife, acting upon advice received by letter from Dr. Holroyd, superintendent of the asylum. This treatment consisted of giving him employment to occupy his mind, such as inducing him to walk around the town. No medicines were given. Employment was the cure according to the asylum physician for his kind of insanity. She said that for the first day he went back to work during the strike at his old employment he was buoyant and cheerful; that he later became depressed and laid and cried and laughed all of Thursday and Friday nights. On Saturday morning she went to the 'phone and called for Mr. Thomason, and he was not there just at that time, and she told the employee answering the 'phone that she would call

later.  She said that she intended to tell him of her husband's condition and ask him to look after him and send him home. She did not later communicate with either Mr. Thomason or to any one else representing defendant company.  It is significant that not one of these witnesses, although knowing of Sowers re-employment in the shops, conveyed information of the facts to which he testified, to the defendant or its agents.

The plaintiff bases her right to a recovery on the grounds: (1) That deceased was incapable by reason of his mental condition of appreciating the dangers of his employment, and of looking out for his own safety; (2) that the defendant's agents with knowledge of the fact, or of facts and circumstances sufficient to put them upon inquiry, employed deceased in dangerous and hazardous employment; and (3) that while so employed he was killed by reason of such mental incapacity.

It is uncontroverted that the employee here was acquainted with the hazards of the employment in which he was engaged, and with the kind of tools and machinery made use of in carrying on the business, and was skilled in his work.  The liability of the defendant must be bottomed on the fact that deceased was insane, that defendant knew of such fact, and that his death was occasioned by such fact.

The general principles of law upon which the rights of the parties depend, while novel as applied to the present case, are well defined, and have been frequently stated in judicial decisions.  While analagous to the law of the employment of minors, the latter is controlled by our statute.  The cases cited to support the principle here invoked by the plaintiff are all cases dealing with the employment of minors.  In fact no case is cited on either side of this controversy in which the employment of an insane person was involved.  However, the law announced by the plaintiff in support of her claim, is sound on general principles regarding the relation of master and servant.  The defendant does not controvert it, though it maintains, and rightly so, that the burden rests upon the plaintiff to prove all elements of her claim; the defendant

contending, however, that the plaintiff has wholly failed to show either of the three elements that she asserts.

Does the evidence show that Sowers was incapable of appreciating the dangers of his employment and looking out for his own safety? No physician testifies to his being insane. So far as the evidence shows his delusions were purely of a religious character, and did not attach to his movements or actions. He was capable of knowing what he wanted to do. From the case cited by plaintiff, *Taylor* v. *Woodson*, 1 Ind. App. 188, it appears that there could be no liability for employing a servant who possesses sufficient capacity to understand and appreciate the dangers surrounding him. This doctrine is supported by *Martin* v. *Coal Co.*, 75 W. Va. 613; *Atkinson* v. *Clark*, 132 Cal. 476; *Arlington Hotel Co.* v. *Tanner*, 111 Ark. 337; *Dennett* v. *Dennett*, 44 N. H. 531; Bailey Per. Inj. (2nd Ed.) 889. Controverting the claim that Sowers did not possess such capacity it appears from the record that up to a few minutes before his death he performed the difficult duties of a skilled mechanic in a perfectly intelligent and satisfactory manner. Even if it be admitted that defendant is shown by the non-expert opinion evidence of the plaintiff that her intestate was of unsound mind just prior to his going to work on the morning of the day of his death, was the defendant company negligent in employing him?

It is true that in the early part of 1921, Sowers had become insane and was sent to the asylum. Thomason, the foreman of the shop in which the decedent was employed, had knowledge of this fact. But he was ·discharged as cured by the asylum authorities, and on his return home went back to his old work in the shops and remained there discharging every duty in a skilful and workmanlike manner, giving 'no evidence of any recurrence of his former malady. This labor embraced over fifteen months. There is no presumption of insanity from the fact that he had formerly been an inmate of an insane asylum. *McPeck* v. *Graham*, 56 W. Va. 200. In that case the court was asked to overthrow a deed on the ground of the insanity of the maker, who it appeared had at

one time been an inmate of the asylum. In discussing the case Judge Brannon said: "The depositions show seven non-expert, non-professional witnesses testifying in a general way, that, in their opinion, Mrs. McPeck was not sane.  *  *  * They say she was eccentric; would stand and say nothing; would take children and wander over premises when visiting, and say nothing to people, and stand silent and apparently troubled. No violent action was shown, no raving mania. We can explain her silence and melancholy on rational grounds."

The learned jurist then went on and detailed that her son had died some years previous and that she was greatly troubled over his death. He traced her melancholy to this bereavement. His words are extremely apropos to the situation we have here, in so far as the effort is made by the plaintiff's evidence to establish the insanity of Sowers. Certainly the foreman of the defendant company had a right to rely upon his release from the asylum, as well as upon the conduct of Sowers for the fifteen months in the service of the company preceding the strike, as evidence of his complete restoration to sanity. The conduct of Sowers at the time he sought re-employment did not indicate any mental incapacity. On the contrary it revealed an intelligent comprehension of what he wanted and of the entire situation. He requested that he be allowed to examine the condition of the shops for himself before he resumed work, and when his request was granted, knowing that he theretofore had been a striker and might be an object of some suspicion, he requested Thomason to accompany him in making his examination and later expressed himself satisfied with the conditions that existed. When he began his work the following morning he did it with his old time skill and care. It was not until Saturday, about noon, that the foreman did notice that he seemed to be downcast. On being asked the reason Sowers gave a perfectly sensible explanation, one that is entirely in accord with the facts of the case and to be expected under the circumstances, stating that his fellow strikers criticized him very severely for going back to work and claimed that he was doing wrong. Thomason is supported in this statement by the helper, who testified for

the plaintiff. In the absence of knowledge of any fact indicating that the employee is of inferior mental incapacity or in the absence of knowledge or circumstances sufficient to put the master upon inquiry he is entitled to presume that the employee is of sufficient mental capacity. *Martin* v. *Coal Co., supra.* The cases of *Philips* v. *Railroad Co.,* 211 Mo. 419 and *Railroad Co.* v. *Parry,* 67 Kan. 515, cited by the plaintiff, are without application under the circumstances in the instant case.

So, we are irresistably led to the conclusion, that the plaintiff has failed to carry the burden of showing any facts and circumstances brought home to the agent of the defendant sufficient to put him upon inquiry, of the mental incapacity of the intestate. Agreeably to general principles, Thomason had the right to assume the existence of normal conditions of his former employee, until he was, in some way, advised to the contrary, or at least, until something sufficient to put him on inquiry as to them is brought to his attention. *Martin* v. *Coal Co., supra; Ewing* v. *Lanark Fuel Co.,* 65 W. Va. 726.

Our conclusion on this point makes the consideration and decision of the other questions raised on the record of how Sowers met his death—whether it was the result of his mental incapacity, and whether he was beyond the scope of his employment at the time it occurred—unnecessary. The plaintiff makes no contention that decedent's death in the yards was the result of negligence of the trainmen in charge of the engine or train that killed him. The court below in directing a verdict in this case, correctly applied the doctrine, that where a court would not, upon the evidence permit a verdict for the plaintiff to stand, it is its duty upon proper motion to direct a verdict for the defendant. *Jameson* v. *N. & W. Ry. Co.,* 97 W. Va. 119; *Hicks* v. *New River & C. Co.,* 94 W. Va. 17; *Hull, Admr.* v. *Ry. Co.,* 78 W. Va. 25.

The judgment is therefore affirmed.

*Affirmed.*